UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN F. D'AMICO,

      Plaintiffs,

v.                                                              Case No. 3:20-cv-920-BJD-PDB

VERNON MONTOYA, et al.,

      Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Steven D'Amico, an inmate of the Florida penal system, initiated this action on August 5, 2020, by filing a pro se Civil Rights Complaint (Compl.; Doc. 1) against two Defendants, Dr. Vernon Montoya and Nurse Lacey Bennefield.[1] He asserts that Defendants were deliberately indifferent to his serious medical needs at the Reception and Medical Center (RMC). Before the Court are Dr. Vernon Montoya's Motion to Dismiss (Doc. 19) and Nurse Lacey

---

[1] Plaintiff also refers to unknown Florida Department of Corrections (FDOC) staff in the case style of his Complaint. He does not include them in the list of Defendants. Therefore, it appears that Plaintiff does not intend to pursue any claims against unnamed FDOC staff. Plaintiff also has not described the unnamed FDOC staff with sufficient particularity that they can be identified. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Accordingly, the Court will direct the Clerk to terminate unnamed FDOC staff as a Defendant in the case.

Bennefield's Motion to Dismiss (Doc. 20). Plaintiff filed a response in opposition to the Motions (Docs. 24, 25). Thus, Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations

In his Complaint and supporting exhibits (Docs. 1-1 through 1-8), Plaintiff purports to state the following claims against Defendants Dr. Montoya and Nurse Bennefield in their individual and official capacities: (1) retaliation for filing grievances, in violation of the First Amendment; (2) deliberate indifference to Plaintiff's chronic lymphocytic leukemia (CLL), in violation of the Eighth Amendment; (3) conspiracy to deprive Plaintiff of treatment for his CLL; (4) discrimination, in violation of the Americans with Disabilities Act (ADA); and (5) torture and cruel, inhumane or degrading treatment, in violation of the United Nations Universal Declaration of Human Rights (UNUDHR). Compl. at 2-3, 5, 15.

According to Plaintiff, he visited Dr. Montoya on April 10, 2019. Id. at 9. Dr. Montoya determined Plaintiff would receive Rituxan maintenance treatments every two months for eighteen months to treat his CLL. Id. at 5, 9. Nurse Bennefield administered a Rituxan treatment to Plaintiff on April 23, 2019. Id. at 9-10. During that appointment, Nurse Bennefield allegedly

harassed Plaintiff, prompting him to report her actions "in his grievances." <u>Id.</u> at 13.

Plaintiff was scheduled for a quarterly examination with Dr. Montoya on June 24, 2019. <u>Id.</u> at 5. However, Plaintiff could not attend the examination because he had gastrointestinal issues. <u>Id.</u> at 6. "Nurse Mike" ordered him to sign a refusal form and threatened to take action if he did not sign it. <u>Id.</u> Plaintiff signed the form, but he wrote "this day only" beside his signature. <u>Id.</u>

Plaintiff maintains Nurse Bennefield did not reschedule his June 24th appointment with Dr. Montoya. <u>Id.</u> On July 18, 2019, Plaintiff submitted a sick call request asking RMC staff to reschedule his appointment. Doc. 1-1. Nurse Mike returned a copy of the sick call request to Plaintiff with a notation that Plaintiff had an appointment to see the oncologist in the second week of August. Compl. at 6; Doc. 1-1. Plaintiff alleges "RMC staff" did not bring him to the August appointment in retaliation for numerous grievances that he filed against them. Compl. at 10.

Plaintiff saw Dr. Montoya on September 5, 2019. <u>Id.</u> at 10. During the appointment, Plaintiff claims Nurse Bennefield interrupted to answer questions Plaintiff directed to Dr. Montoya and appeared hostile. <u>Id.</u> at 8. Dr.

Montoya terminated the Rituxan treatments and determined that he would only need to examine Plaintiff every three months. Id. at 11.

Plaintiff alleges he again visited Dr. Montoya on January 9, 2020.[2] Id. at 13. Dr. Montoya determined Plaintiff's lymph nodes had not significantly enlarged and stated he would examine Plaintiff in three months. Id. at 13-14. According to Plaintiff, Nurse Bennefield has not scheduled an appointment for him since that date. Id. at 14.

Plaintiff states that RMC protocol dictates a cancer patient must refuse at least two oncology appointments before termination of an oncology consultation. Id. at 11. Plaintiff maintains that Dr. Montoya and Nurse Bennefield conspired for Plaintiff to miss his June 2019 and August 2019 appointments, so Dr. Montoya could cease Rituxan treatments. Id. at 10. Plaintiff contends Dr. Montoya and Nurse Bennefield sought to end his treatments in retaliation for a previous civil rights complaint that Plaintiff filed against Dr. Montoya and grievances that Plaintiff submitted about Nurse Bennefield. Id. at 9-10. Plaintiff alleges he has not received a Rituxan treatment since April 23, 2019, resulting in the progression of his CLL. Id. at

---

[2] Plaintiff alleges the date is January 9, 2019, in his Complaint; however, considering the timeline of events, it appears that the date is January 9, 2020.

14. He now suffers from sore, enlarged lymph nodes. <u>Id.</u> Plaintiff seeks proper oncological care, litigation costs, and compensatory and punitive damages. <u>Id.</u> at 15.

### III. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Gill ex rel. K.C.R. v. Judd</u>, 941 F.3d

504, 511 (11th Cir. 2019) (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. See Iqbal, 556 U.S. at 678.

## IV. Consideration of Extrinsic Evidence

In his Complaint, Plaintiff references and attaches grievances that he filed with RMC officials. Compl. at 5-14; Docs. 1-1 through 1-8. With his Motion, Dr. Montoya also attaches medical records to demonstrate he did not deny Plaintiff medical care. Docs. 19-1 through 19-4.

Generally, a court should not consider extrinsic evidence when ruling on a motion to dismiss unless a document "is central to the plaintiff's claim" and incorporated by reference in the complaint. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."). In fact, Rule 12 provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." See Fed. R. Civ. P. 12(d); see also Trustmark Ins.

Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.").

However, the Eleventh Circuit has held a court may consider extrinsic evidence when ruling on a 12(b)(6) motion if a document "is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). Thus, when a plaintiff, in his complaint, incorporates by reference a document that is central to his claim, and the opposing party does not contest the authenticity of the document, a court may consider it when ruling on a motion to dismiss. Id.

Here, in their Motions to Dismiss, Dr. Montoya and Nurse Bennefield do not question the authenticity of the documents Plaintiff attached to his Complaint. See generally Docs. 19, 20. Accordingly, the Court will consider them, to the extent relevant, in ruling on both Motions.

Although Dr. Montoya also attaches exhibits in support of his Motion, the Court will not convert Dr. Montoya's Motion into a motion for summary judgment and will not consider the exhibits. See Fed. R. Civ. P. 12(d). The Court's inquiry at this stage is focused upon whether the Complaint gives

7

Defendants fair notice of the claims and the grounds upon which they rest. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). As to whether Plaintiff has failed to state a claim upon which relief can be granted, this assertion "merely tests the sufficiency of the complaint; it does not decide the merits of the case." Harvin v. JP Morgan Chase Bank, N.A., No. 1:15-CV-04477-MHC-JFK, 2016 WL 9450467, at *5 (N.D. Ga. June 28, 2016), report and recommendation adopted by 2016 WL 9453333 (N.D. Ga. Aug. 1, 2016), aff'd, 696 F. App'x 987 (11th Cir. 2017). Therefore, the Court will consider Dr. Montoya's pending Motion as a 12(b)(6) motion for failure to state a claim and will limit its analysis and ruling accordingly.

## V. Analysis

### A. Defendant Nurse Bennefield's Motion

In her Motion to Dismiss, Defendant Nurse Bennefield seeks dismissal of the Complaint on three grounds: (1) Plaintiff fails to state a claim upon which relief can be granted pursuant to the First Amendment, Eighth Amendment, ADA, and UNUDHR; (2) she is entitled to qualified immunity; and (3) the Eleventh Amendment bars Plaintiff from seeking monetary damages from Nurse Bennefield in her official capacity. Doc. 20 at 1.

### i. First Amendment Retaliation Claim

In the Complaint, Plaintiff maintains Nurse Bennefield failed to schedule medical appointments and discontinued his Rituxan treatments because he submitted grievances against her. Compl. at 9-10. In Nurse Bennefield's Motion, she argues Plaintiff has not sufficiently alleged a First Amendment retaliation claim. Doc. 20 at 7-10. Nurse Bennefield contends Plaintiff does not allege she knew about his protected speech or that she had the authority to take the retaliatory actions. Id.

An inmate who suffers adverse consequences because he submitted grievances about his conditions of confinement demonstrates a First Amendment violation. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To state an actionable retaliation claim, a plaintiff must allege:

> (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting with alteration Smith v. Mosely, 532 F.3d 1270, 1276 (11th Cir. 2008)).

Here, Plaintiff fails to state a claim of retaliation in violation of the First

9

Amendment because he does not sufficiently allege a causal relationship between his protected speech and any retaliatory actions. Plaintiff makes a conclusory allegation in his Complaint that Nurse Bennefield failed to schedule additional appointments for his Rituxan treatments because he submitted grievances about her harassment of him on April 23, 2019. Compl. at 10. In his Response, Plaintiff does contend that Nurse Bennefield verbally harassed him during the April 23rd appointment by generally discussing his criminal case, civil complaints, grievances, and medical concerns. Doc. 24 at 2. Plaintiff does not make these allegations in his Complaint. But, even taking his allegations as true, Plaintiff does not allege Nurse Bennefield knew <u>she</u> was the subject of any of his grievances and, thus, had any motivation to retaliate against Plaintiff.  The Complaint includes no allegations that Nurse Bennefield saw the grievances that Plaintiff filed against her, or that she responded to any of the grievances.

Moreover, Nurse Bennefield apparently rescheduled Plaintiff's Rituxan treatment for the second week of August. Compl. at 6; Doc. 1-1. Although Plaintiff alleges RMC staff members did not bring him to that appointment, he does not implicate Nurse Bennefield in their actions. Compl. at 10. Plaintiff's conclusory, unsupported allegations that Nurse Bennefield retaliated against

amount to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not satisfy the federal pleading standard. Iqbal, 556 U.S. at 678. See also Tani v. Shelby Cnty., 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations"). As such, Nurse Bennefield's Motion is due to be granted as to Plaintiff's First Amendment claims against her.

### ii. Eighth Amendment Medical Claim

Plaintiff alleges Nurse Bennefield was deliberately indifferent to his serious medical needs in that she stopped Rituxan treatments, which resulted in the progression of his CLL. Compl. at 10, 14. In her Motion, Nurse Bennefield argues Plaintiff does not sufficiently allege that she knew of a risk of serious harm or that her deliberate indifference caused the progression of Plaintiff's CLL. Doc. 20 at 11-14.

A claim for deliberate indifference to a serious illness or injury is cognizable under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim for relief, a plaintiff first must allege he had a serious medical need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Next,

the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence").

"Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." <u>Hamm v. DeKalb Cty.</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting with alteration <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). As such, allegations of medical negligence are not cognizable under § 1983. <u>Estelle</u>, 429 U.S. at 106.

However, the Eleventh Circuit has not held an Eighth Amendment claim is never plausible when an inmate receives some medical care. On the contrary, even when a prisoner receives some medical care, a plaintiff states a claim for deliberate indifference if he alleges the care he received was "so cursory as to amount to no treatment at all," was grossly inadequate, or was guided by a "decision to take an easier but less efficacious course of treatment." <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999); <u>see also</u> <u>Harris v. Thigpen</u>, 941

12

F.2d 1495, 1505 (11th Cir. 1991) ("Medical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'").

The Eleventh Circuit has "repeatedly found that 'an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" McElligott, 182 F.3d at 1255. "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." Id. at 1257. Delaying treatment for non-life-threatening injuries that cause pain, even if momentary, can give rise to a cognizable constitutional claim. See, e.g., id.

Here, Plaintiff fails to state a claim for relief against Nurse Bennefield for deliberate indifference to his serious medical need in violation of the Eighth Amendment. The Court finds Plaintiff does not sufficiently allege causation. In his Complaint, Plaintiff asserts that Nurse Bennefield failed to schedule appointments for treatment or visits with Dr. Montoya after June 24, 2019, and January 9, 2020. However, according to the grievance records Plaintiff

13

submitted with his Complaint, Plaintiff had an appointment scheduled for the second week of August. Doc. 1-1. It was the <u>oncologist</u> who chose to discontinue Plaintiff's chemotherapy treatments because Plaintiff refused to visit a specialist. Docs. 1-2 at 2; 1-5 at 2. Plaintiff does not offer more than bare allegations that Nurse Bennefield had influence over Dr. Montoya's decision to continue with a particular treatment plan.

According to Plaintiff, Nurse Bennefield appropriately administered the Rituxan treatments to Plaintiff on April 23, 2019. Plaintiff complains about verbal harassment during the treatment, but not about Nurse Bennefield's administration of the treatment. Compl. at 9-10; Doc. 24 at 2. However, "verbal abuse alone is insufficient to state a constitutional claim." <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008); <u>see also</u> <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 ("While [plaintiff] objects to [defendant]'s apparently brusque mannerisms, it is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required.") (citing <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991)) (footnote omitted). Plaintiff also does not allege that he complained about the ill effects from the stoppage of treatments to Nurse Bennefield, or that she otherwise knew he had been

suffering ill effects, but she refused to act. For the above reasons, Nurse Bennefield's motion to dismiss is due to be granted and Plaintiff's Eighth Amendment claim against her dismissed.

### iii. Conspiracy

Plaintiff maintains Nurse Bennefield and Dr. Montoya conspired to deprive Plaintiff of medical care in retaliation for his prior civil rights complaint against Dr. Montoya and grievances against Nurse Bennefield. Compl. at 9-10. To establish a § 1983 conspiracy claim, "a plaintiff must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights." Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010). "[T]he linchpin for conspiracy is agreement, which presupposes communication. . . ." Bailey v. Bd. of Cty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992).

In his Complaint, Plaintiff offers no facts suggesting Nurse Bennefield and Dr. Montoya reached an agreement to deprive Plaintiff of medical treatment in retaliation for his protected speech. Specifically, Plaintiff does not claim Dr. Montoya and Nurse Bennefield communicated or had opportunities to communicate with each other. Rather, he only alleges  Dr. Montoya and Nurse Bennefield attended one appointment together on September 9, 2019;

however, according to Plaintiff, they had already denied Rituxan treatments to him in June and August by that time. Compl. at 6, 8, 10. Therefore, Nurse Bennefield's Motion as to Plaintiff's conspiracy claim against her is due to be granted.

### iv. ADA

Title II of the ADA, which applies to state prisons, provides as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. See also Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998) (holding Title II of the ADA "unambiguously extends to state prison inmates"). To state a claim of discrimination under the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." Lonergan v. Fla. Dep't of Corr., 623 F. App'x 990, 992 (11th Cir. 2015).

The Court initially notes that only public entities may be liable under the ADA. Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 478 (11th Cir. 2015). Therefore, to the extent Plaintiff alleges Nurse Bennefield violated the ADA in her individual capacity, he fails to state a claim for relief. Id.

Even assuming Plaintiff can sue Nurse Bennefield in her official capacity and Plaintiff is a qualified individual with a disability, he still does not state a plausible claim for relief. Most significantly, the Complaint does not contain any facts suggesting Nurse Bennefield denied Plaintiff treatments because of his disability. Plaintiff instead contends Nurse Bennefield denied treatments to him in retaliation for grievances that he filed against her. Compl. at 5, Therefore, Nurse Bennefield's Motion as to Plaintiff's ADA claim is due to be granted.

### v. UNUDHR

Plaintiff alleges Nurse Bennefield's actions violated the UNUDHR's prohibition against torture and cruel or inhumane treatment. Compl. at 15. "The rights secured by the UNDHR are not federal rights." Moore v. McLaughlin, 569 F. App'x 656, 660 (11th Cir. 2014). Such a claim is not cognizable in a § 1983 action where a plaintiff must show deprivation of a

federal right. Id. Accordingly, Nurse Bennefield's Motion as to Plaintiff's UNUDHR claim against her is due to be granted.

### vi. Official Capacity Claims

"[W]hen an officer is sued under [§] 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (internal quotations and citations omitted). In such cases, the plaintiff must establish the entity's official policy or unofficial custom or practice was the "moving force" behind the alleged constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiff's Complaint suggests that Nurse Bennefield is an employee of the FDOC. In her Motion, Nurse Bennefield clarifies that she is an agent of a private company contracting with the FDOC to provide medical services. Doc. 20 at 18. Regardless, the claims are due to be dismissed because Plaintiff has not alleged that the FDOC or the private company was responsible for a custom, policy, or practice that was the moving force behind the alleged violations. There are no allegations suggesting that Nurse Bennefield can be held liable in her official capacity for any of Plaintiff's claims. Accordingly,

Plaintiff's claims against Nurse Bennefield in her official capacity are due to be dismissed.

### vii. Qualified Immunity

Nurse Bennefield asserts she is entitled to qualified immunity from liability under § 1983. Doc. 20 at 20-22. In his Response, Plaintiff does not appear to refute Nurse Bennefield's claim of qualified immunity. See generally Doc. 24. Plaintiff instead repeats the allegations in his Complaint that Nurse Bennefield failed to schedule his Rituxan treatments despite a serious risk of harm to Plaintiff. Id. at 5.

An official sued in her individual capacity "is entitled to qualified immunity for [her] discretionary actions unless [s]he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id. In other words, "[q]ualified immunity shields an officer from suit when [he] makes a decision

19

that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." <u>Taylor v. Riojas</u>, 141 S. Ct. 52, 53 (2020) (quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate she was acting within her discretionary authority at the relevant times. <u>Id.</u> Nurse Bennefield carries her burden. Plaintiff sues Nurse Bennefield for acts or omissions that occurred while she acted in her role as an RMC nurse. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate Defendant violated a constitutional right that was "clearly established" at the time of the alleged violation. <u>Id.</u> As set forth above, the Court has found that Plaintiff failed to state plausible First and Eighth Amendment claims against Nurse Bennefield. Therefore, Nurse Bennefield is entitled to qualified immunity as to Plaintiff's First and Eighth Amendment claims against her.[3]

---

[3] The Court need not address Nurse Bennefield's assertion that the Eleventh Amendment bars Plaintiff's claims for monetary damages against her in her official capacity.

20

## B. Defendant Dr. Montoya's Motion

In his Motion to Dismiss, Defendant Dr. Montoya seeks dismissal on one ground: Plaintiff fails to state a claim upon which relief can be granted pursuant to the Eighth Amendment. Doc. 19 at 1-2. Dr. Montoya does not address or seek dismissal of the following claims: retaliation for protected speech in violation of the First Amendment; conspiracy to deprive Plaintiff of his rights pursuant to the First and Eighth Amendments; discrimination in violation of the ADA; and torture and cruel, inhumane or degrading treatment in violation of the UNUDHR. See generally Doc. 19

### i. Eighth Amendment

Plaintiff alleges Dr. Montoya was deliberately indifferent to his serious medical needs. He maintains Dr. Montoya stopped Rituxan treatments for his CLL. Compl. at 10.  The cessation of treatment resulted in the progression of his CLL. Id. at 14. In his Motion, Dr. Montoya contends Plaintiff's allegations do not amount to deliberate indifference to a serious medical need, but only to a difference in medical opinion. Doc. 19 at 3.

Here, Plaintiff has alleged sufficient facts suggesting Dr. Montoya was deliberately indifferent to his serious medical needs.[4] According to Plaintiff, Dr. Montoya determined on April 10, 2019, Plaintiff would receive Rituxan maintenance treatments every two months for eighteen months to treat his CLL. Compl. at 5, 9. Plaintiff did not attend his next appointment on June 24, 2019, due to gastrointestinal issues. Id. at 5. According to the grievance records Plaintiff submitted with his Complaint, the oncologist then chose to discontinue Plaintiff's chemotherapy treatments because he refused to visit a specialist. Docs. 1-2 at 2; 1-5 at 2. Plaintiff identifies Dr. Montoya as the oncologist who terminated his treatment. Compl. at 5, 9-10. Plaintiff contends he has not received treatment for his CLL since April 23, 2019. Id. at 13. Taking Plaintiff's allegations as true, Dr. Montoya knew Plaintiff had a serious medical need, and he refused to provide necessary care for a non-medical

---

[4] The Court notes that Plaintiff brought a similar claim against Dr. Montoya in the United States District Court for the Northern District of Florida. The Northern District denied Dr. Montoya's Motion to Dismiss finding Plaintiff sufficiently stated a claim for relief. D'Amico v. Montoya, No. 4:15CV127-MW/CAS, 2016 WL 11248929, at *4 (N.D. Fla. Feb. 25, 2016), report and recommendation adopted in part, rejected in part on other grounds, 2016 WL 8711513 (N.D. Fla. Apr. 1, 2016). Moreover, the Northern District granted Plaintiff's request for a preliminary injunction because he had not received treatment for his CLL. D'Amico v. Montoya, No. 4:15CV127-MW/CAS, 2016 WL 4708485, at *1 (N.D. Fla. Sept. 8, 2016).

reason. Plaintiff's allegations nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Accordingly, Dr. Montoya's Motion is due to be denied.

In consideration of the foregoing, it is now

**ORDERED:**

1. Defendant Nurse Lacey Bennefield's Motion to Dismiss (Doc. 20) is **granted**, and Plaintiff Steven D'Amico's First Amendment, Eighth Amendment, conspiracy, ADA, and UNUDHR claims against her are **dismissed with prejudice**.

2. The **Clerk of the Court** shall **terminate** Nurse Lacey Bennefield[5] and unknown FDOC staff as Defendants in the case.

3. Defendant Dr. Vernon Montoya's Motion to Dismiss (Doc. 19) is **DENIED**.

---

[5] Nurse Lacey Bennefield is identified on the docket as Nurse Lacey Barnett.

23

4.      Defendant Dr. Vernon Montoya must answer the Complaint (Doc.

1) within **thirty days** of the date of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of

March, 2022.

_____

BRIAN J. DAVIS
United States District Judge

Jax-9

C:      Steven F. D'Amico #L58304
Counsel of record

24