UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN F. D'AMICO,

Plaintiffs,

v. Case No. 3:20-cv-920-BJD-PDB

VERNON MONTOYA,

Defendant.

---

# ORDER

## I. Status

Plaintiff Steven D'Amico, an inmate of the Florida penal system, is proceeding on a civil rights complaint (Doc. 1; Compl.) against an oncologist under contract with the Florida Department of Corrections, Dr. Vernon Montoya, with whom Plaintiff treated for chronic lymphocytic leukemia (CLL) when he was housed at the Reception and Medical Center (RMC). *See* Compl. at 5-6.[1] Plaintiff's claims against the other named Defendant, Nurse Barnett, have been dismissed. *See* Order (Doc. 35).

---

[1] Plaintiff filed exhibits with his complaint: a sick-call request and grievance records (Docs. 1-1 through 1-8; Pl. Exs. A-H).

Plaintiff contends that, in April 2019, Dr. Montoya ordered that he receive "Retuxin maintenance treatments" every two months for eighteen months for his CLL. *See* Compl. at 9. Plaintiff had to refuse his June 24, 2019 quarterly examination and treatment because he was experiencing diarrhea. *Id.* at 6, 8. The appointment was not immediately rescheduled, and Plaintiff did not see Dr. Montoya again until September 5, 2019, at which time he had not had his required maintenance treatments for nearly five months. *Id.* at 6-7. Plaintiff asserts the delay in treatment "allow[ed] his cancer to progress." *Id.* at 8-9. He further alleges Dr. Montoya wrongfully discontinued the Retuxin treatments and put him on a three-month follow-up schedule, which "paved [the] way for [him] to be transferred [out of] RMC." *Id.* at 10-11.

Plaintiff contends Dr. Montoya changed his treatment protocol in reprisal for him having filed a civil rights complaint against Dr. Montoya.[2] *Id.* at 10-12. He further alleges Dr. Montoya and Nurse Barnett "conspire[ed] to terminate [his] Retuxin maintenance treatments for CLL to facilitate [his] transfer." *Id.* at 13. He acknowledges having seen Dr. Montoya again on January 9, 2019, but alleges that, as of the time he filed his complaint in August 2020, he had not "received any form of medical care for CLL since

[2] Plaintiff filed a civil rights action against Dr. Montoya in 2015 in the United States District Court for the Northern District of Florida. *See* Case No. 4:15-cv-127-MW/CAS.

[then].” *Id.* at 13-14. He claims Dr. Montoya violated his rights under the First and Eighth Amendments, the Americans with Disabilities Act (ADA), and the Universal Declaration of Human Rights (UDHR). *Id.* at 15. As relief, he seeks “[p]roper oncological care for CLL” and damages. *Id.*

Dr. Montoya moves for summary judgment (Doc. 63; Def. Mot.), arguing as to the deliberate indifference claim that Plaintiff did not have a serious medical need between April 2019 and September 2019; the evidence shows Plaintiff received constitutionally appropriate medical care for his CLL, and any failure of care did not cause an injury; and Dr. Montoya was not responsible for the delay in rescheduling Plaintiff's missed June 24, 2019 appointment. *See* Def. Mot. at 13-17. With his motion, Dr. Montoya provides the following evidence: progress notes (Doc. 64; Def. Ex. A); the affidavit of Arnold S. Blaustein, M.D., FACP (Doc. 65; Def. Ex. B); and his own affidavit with supporting documentation, much of which is duplicative of other filings (Doc. 66; Def. Ex. C).

Dr. Montoya also argues Plaintiff points to no evidence supporting his claims under the First Amendment or the ADA, and Plaintiff has no cognizable claim under the UDHR. *Id.* at 18-21. It does not appear Plaintiff intended to state a claim under the ADA and UDHR against Dr. Montoya. He contends in his complaint that the “improper termination of approved [maintenance

treatments] by Dr. Montoya on September 5, 2019, is [the] main issue of [his] complaint." *See* Compl. at 10. To the extent he intended to pursue claims under the ADA or UDHR against Dr. Montoya, for the reasons stated in the Court's Order on Defendants' motions to dismiss, the ADA claim is not plausible as alleged and the UDHR claim is not cognizable. *See* Order (Doc. 35). The First Amendment retaliation claim will be addressed below.

Plaintiff opposes the motion (Doc. 74; Pl. Resp.) with a supporting affidavit (Doc. 74; Pl. Aff.), arguing Dr. Montoya has "ultimate responsibility to provide [him] with adequate medical care," including ensuring that his appointments are timely scheduled for his maintenance treatments, which were to occur every two months. *See* Pl. Resp. at 3. He also argues Dr. Montoya "abandoned [him] and neglected to provide all medical care [for him]" by canceling an appointment Plaintiff had scheduled for the second week of August, which was intended to be the "make-up" appointment for the one Plaintiff missed on June 24, 2019. *Id.* Plaintiff maintains that Dr. Montoya, knowing Plaintiff had already missed one appointment (on June 24, 2019), conspired with his nurses to force Plaintiff to "miss" a second appointment—one that had been scheduled for the second week of August—by unilaterally canceling it, so that Plaintiff, per "protocol" would be "terminated" from the oncology consult. *Id.* at 3-4. *See also* Compl. at 11. Plaintiff says that each time

Dr. Montoya "abandoned and neglected" his medical needs, his "lymph nodes grew enlarged and . . . [his] white blood cell count" (WBC) spiked. *See* Pl. Resp. at 5-6. *See also* Pl. Aff. ¶ 6.[3]

**II. Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats &*

[3] Dr. Montoya filed a reply (Doc. 76), in which he merely disputes, in repetitive fashion, Plaintiff's contentions.

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. *Id.* Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)). Additionally, a court should accept as true a pro se plaintiff's assertions in his verified complaint and sworn affidavit attached to his response. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019).

## III. Facts

The parties' dispute centers around Plaintiff's medical treatment for a narrow period: between June 2019 and September 2019. It is undisputed that, at that time, Plaintiff had "a history of CLL/low grade lymphoma," for which he had been treating with Dr. Montoya for years. *See* Def. Ex. A at 3; Def. Ex. C ¶¶ 2, 7. At the two appointments Plaintiff had with Dr. Montoya immediately before the missed June 24, 2019 appointment—in February and April 2019—Dr. Montoya noted Plaintiff was "stable," and the plan was to continue the maintenance therapy (Rituximab/Hycela) for one more year as of February 7, 2019.[4] *See* Def. Ex. A at 3-4. It is also undisputed that Plaintiff missed the June 24, 2019 appointment because he was having gastrointestinal distress, and he signed—whether voluntarily or not—a refusal-of-treatment form. *See* Pl. Compl. at 6; Def. Ex. C ¶ 9.

The parties also do not materially dispute that Dr. Montoya was not responsible for scheduling patient appointments or ensuring missed appointments were timely rescheduled. *See* Def. Ex. C ¶ 6; Compl. at 6-7; Pl. Resp. at 3. *See also* Def. Ex. B ¶¶ 11-12. Dr. Montoya avers that Centurion

---

[4] Plaintiff had been receiving maintenance treatments since January 2018. *See* Def. Ex. A at 5.

handled scheduling.[5] *See* Def. Ex. C ¶¶ 10-11. Finally, there is no dispute that Plaintiff did not see Dr. Montoya during the months of June, July, and August 2019, and when Plaintiff saw Dr. Montoya again in September 2019, Dr. Montoya concluded Plaintiff had to be "restage[d] . . . to determine if . . . the same treatment [maintenance therapy]" was indicated given Plaintiff's last treatment was in April. *See* Pl. Ex. A; Def. Ex. C ¶¶ 8-12; Def. Ex. A at 3-5. According to an August 19, 2019 grievance response, the "[o]ncologist discontinued [Plaintiff's] chemotherapy treatment" because he "refus[ed] a follow up appointment." *See* Pl. Ex. B at 2.

The parties dispute whether Plaintiff had an appointment scheduled for the second week of August and whether Dr. Montoya justifiably discontinued Plaintiff's maintenance treatments after he missed only one appointment. As to the former dispute, Dr. Montoya acknowledges Plaintiff has a copy of a sick-call request dated July 18, 2019, in which he complained that his June appointment had not yet been rescheduled, and that includes the following unsigned, uninitialed note: "Has appointment 2nd week of August to see oncologist." *See* Pl. Ex. A at 1; Def. Ex. C ¶ 11. Dr. Montoya avers he does not

[5] Centurion is a "private healthcare entity, which at [the time], was under contract with the State of Florida to provide health care to inmates." *See* Def. Ex. C ¶ 2.

know who wrote the note, nor does he know whether Plaintiff did have an appointment scheduled for the second week of August. *See* Def. Ex. C ¶ 11.

As to the latter dispute, Dr. Montoya's September 5, 2019 progress note states as follows:

> [Plaintiff] was on maintenance therapy with Hycela every two months, starting January of 2018. The last time he was treated was in April of 2019. He was put in confinement and refused follow up with the physician. . . . [He] now presents for follow up and demanding to be re-started on treatments.

*See* Def. Ex. A at 5. At the appointment, Dr. Montoya concluded Plaintiff had to be restaged because he had gone without treatment for over five months. *Id.* Dr. Montoya ordered a PET/CT scan, noting the request was "urgent." *Id.* At the next appointment, on October 10, 2019, Dr. Montoya concluded maintenance therapy was not clinically indicated because Plaintiff's PET/CT scan showed "no active disease." *Id.* at 6. Dr. Montoya noted, "With this disease, we often don't treat until the patient develops bully adenopathy or markedly elevated [WBC] and [Plaintiff] has neither." *Id. See also* Def. Ex. C ¶13. Dr. Montoya avers, "[Plaintiff's] CLL had remained stable and had not progressed since at least April 10, 2019[, and therefore he] would not have received any benefit from any treatment therapies or pharmacologic intervention." *See* Def. Ex. C. ¶ 16.

Plaintiff had follow-up appointments with Dr. Montoya on the following dates: January 9, 2020; December 3, 2020; January 7, 2021; February 4, 2021, March 4, 2021, and April 1, 2021. *See* Def. Ex. A at 7-9, 16-18. *See also* Def. Ex. C ¶¶ 14-15, 18. On January 7, 2021, Plaintiff's PET/CT scan "showed enlarged lymph nodes," which indicated the disease had become "active" again. *See* Def. Ex. C ¶ 18. Thus, Dr. Montoya started him on maintenance therapy once again. *Id. See also* Def. Ex. A at 17. Dr. Arnold S. Blaustein, a board-certified hematologist/oncologist, offers an affidavit on Dr. Montoya's behalf, opining that, in treating Plaintiff, Dr. Montoya "met or exceeded the applicable standard of care" under Florida law. *See* Def. Ex. B ¶¶ 1, 9, 13.

## IV. Analysis

### A. Deliberate Indifference

Deliberate indifference to an inmate's serious medical needs constitutes the unnecessary and wanton infliction of pain, which the Eighth Amendment proscribes. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.").

However, disputes regarding the adequacy of medical care a prisoner has received, including diagnostic testing and treatment protocols, sound in tort law. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir. 1981)) ("[F]ederal courts are generally reluctant to second guess medical judgments."). In other words, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107).

The Eleventh Circuit has identified limited circumstances in which a prisoner may demonstrate deliberate indifference to his serious medical needs when he has received some treatment: when medical treatment is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"; when a medical provider "take[s] an easier and less efficacious course of treatment"; or when medical care "is so cursory as to amount to no treatment at all." *Id.* at 1544. Additionally, delaying necessary medical care can amount to deliberate indifference, but "the reason for the delay and the nature of the medical need is relevant in determining

what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

When a prison outsources its medical care to a private company or doctor, the contract medical provider is obligated to provide constitutionally adequate medical care in accordance with Eighth Amendment principles. *Ancata*, 769 F.2d at 703. However, a claim under § 1983 must be based on something more than a theory of respondeat superior. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)).

Despite Dr. Montoya's assertion to the contrary, the Court accepts that Plaintiff had a serious medical need: he was actively undergoing treatment for and monitoring of CLL. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) ("[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment . . . .'"). Plaintiff alleges in his complaint that Dr. Montoya was deliberately indifferent in two ways: (1) by failing to ensure his July 2019 appointment was promptly rescheduled, so that he would not have a lapse in maintenance treatments; and (2) by terminating his maintenance treatments for having missed only one appointment, which caused his cancer to progress. *See* Compl. at 8-9.

Plaintiff's assertions are belied by the evidence. First, in his complaint, Plaintiff alleges Nurse Barnett was the reason his June appointment was not promptly rescheduled; he does not directly blame Dr. Montoya for the delay or lapse in maintenance treatments. *See* Compl. at 6-7, 10-11. Regardless, it is undisputed Dr. Montoya was not responsible for scheduling or rescheduling appointments. *See* Pl. Resp. at 3 (acknowledging appointments were scheduled by nurses under the "supervision of Dr. Montoya"). Even if Dr. Montoya had supervisory responsibilities over employees responsible for ensuring Plaintiff's appointment was timely rescheduled, Dr. Montoya cannot be held liable under § 1983 for an employee's negligence or dilatory conduct. *See Craig*, 643 F.3d at 1310; *see also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior.").

With respect to the maintenance treatments, even if Dr. Montoya should not have discontinued Plaintiff's maintenance treatments for having missed—not refused—one appointment, the evidence shows those treatments were no longer medically indicated when Dr. Montoya evaluated Plaintiff in September 2019. Plaintiff's disease had not progressed during the five-month lapse in treatment, but rather, his scans—which Dr. Montoya ordered on an "urgent" basis—showed he had "no active disease" at that time. *See* Def. Ex. A at 5-6.

Plaintiff points to no evidence supporting his speculative assertion to the contrary. *See Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) ("Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion.").

Plaintiff suggests in his response that he lacks evidence because Dr. Montoya failed to comply with discovery requests. *See* Pl. Resp. at 4-5. To the extent Plaintiff is attempting to invoke relief available under Rule 56(d), even if such a request were properly before the Court, no such relief is warranted here. *See* Fed. R. Civ. P. 56(d) (permitting a court to defer consideration of a Rule 56 motion or allow time for discovery if a party opposing the motion demonstrates he "cannot present facts essential to justify [his] opposition"). Plaintiff was afforded an opportunity to conduct discovery, and the docket shows he in fact did receive some discovery from Dr. Montoya. *See* Docs. 51-54. Plaintiff sought to compel better or more complete responses to some of his discovery requests (Docs. 51, 52), but the Court denied his motions for his failure to first confer with opposing counsel. *See* Order (Doc. 59). In the same Order, the Court extended the deadline for completing discovery and filing motions to compel. *See id.* Plaintiff did not thereafter seek relief from the Court related to discovery.

In his response to the motion for summary judgment, Plaintiff claims Dr. Montoya failed to produce "protocols for cancer patients," but he does not say how the lack of such evidence prevents him from successfully opposing Dr. Montoya's motion. *See* Pl. Resp. at 4-5. And any relevant "protocol" related to treatment for CLL appears to be referenced in some respect in Plaintiff's medical chart. *See* Def. Ex. A at 6 ("With this disease, we often don't treat until the patient develops bully adenopathy or markedly elevated [WBC] and [Plaintiff] has neither."). Dr. Montoya's expert similarly avers, "CLL is not treated unless the patient's blood [sic] [WBC] . . . is markedly elevated . . . or [he] has significant/bulky lymphadenopathy . . . or has systemic symptoms." *See* Def. Ex. B ¶ 10.

Even if Dr. Montoya unjustifiably (or in contravention of "protocol") discontinued Plaintiff's maintenance treatments for having missed one appointment, when Plaintiff saw Dr. Montoya in September 2019, Dr. Montoya evaluated him and ordered appropriate tests to inform treatment decisions. At most, Plaintiff disagrees with Dr. Montoya's medical judgment or accuses Dr. Montoya of breaching protocol. Even if Dr. Montoya's treatment decisions were "wrong" or could have been better, or even if he breached protocol, his conduct would not amount to deliberate indifference but rather would constitute negligence. *See Hamm*, 774 F.2d at 1575. *See also Hoffer v. Sec'y, Fla. Dep't of*

*Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) ("With respect to prisoners' medical care, in particular . . . the Eighth Amendment doesn't require it to be 'perfect, the best obtainable, or even very good.'").

In short, the evidence does not permit the reasonable inference that the care Plaintiff received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Harris*, 941 F.2d at 1505. On the contrary, Dr. Montoya offers the affidavit of another oncologist, who opines his treatment of Plaintiff "met or exceeded the applicable standard of care." *See* Def. Ex. B ¶ 9. The Court finds Dr. Montoya demonstrates by reference to the record that there are no genuine issues of material fact to be determined at trial. *See Clark*, 929 F.2d at 608. Plaintiff fails to point to evidence in the record that demonstrates a genuine dispute of material fact exists.[6] As such, Dr. Montoya is entitled to summary judgment on Plaintiff's deliberate indifference claim.[7]

---

[6] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1061 (11th Cir. 2022).

[7] In his response, Plaintiff also argues Dr. Montoya was deliberately indifferent to his serious medical needs by canceling an appointment that supposedly was scheduled for the second week of August 2019, and by failing to refer him to a mental health care specialist. *See* Pl. Resp. at 3, 4. Plaintiff does not allege in his complaint that he is proceeding against Dr. Montoya for such conduct. *See generally* Compl. He may not raise new substantive facts or

**B. Retaliation**

To establish a First Amendment violation, a plaintiff must demonstrate the following:

> (1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech ....

*O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (second alteration in original).

Accepting that Plaintiff engaged in constitutionally protected speech of which Dr. Montoya knew (complaints or grievances), Plaintiff fails to point to evidence showing or permitting the reasonable inference Dr. Montoya retaliated against him for doing so. Plaintiff alleges Dr. Montoya withdrew his maintenance treatments in September 2019 "in reprisal for complaints made against [Dr. Montoya]." *See* Compl. at 9-10. But the medical records

---

a new theory of liability in his response to Dr. Montoya's motion for summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."). Regardless, as discussed, it is undisputed that Dr. Montoya was not involved in scheduling appointments. And it is not clear Plaintiff even had an appointment scheduled for the second week of August or, if he did, why it was canceled or changed. Moreover, no evidence indicates Dr. Montoya knew Plaintiff required mental health treatment but refused to make a referral for such treatment.

demonstrate Dr. Montoya's decision to suspend the maintenance treatments in September 2019 was based on objective medical evidence—not personal animus—and when Plaintiff's scans and lab results showed a recurrence in the disease in January 2021, Dr. Montoya ordered the maintenance treatments to resume. *See* Def. Ex. A at 5-6, 17. Plaintiff offers or points to no evidence substantiating his speculative assertion that Dr. Montoya retaliated against him. Indeed, Plaintiff does not address the First Amendment claim at all in his response, suggesting he abandons it. *See generally* Pl. Resp. Accordingly, Dr. Montoya is entitled to summary judgment on Plaintiff's First Amendment claim.

**V. Conclusion**

Finding Dr. Montoya demonstrates there are no genuine issues of material fact to be determined at trial, it is now

**ORDERED:**

1. Defendant Dr. Vernon Montoya's motion for summary judgment (Doc. 63) is **GRANTED**.

2. The **Clerk** is directed to enter judgment in favor of Defendant Dr. Montoya, terminate any motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of August 2023.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Steven F. D'Amico
Counsel of Record